Syllabus.

107   304
,130  135
107   304
153   311
153   427
107   304
162   581
107   304
174   220
107   304
208   ²535

## FRANK GRUNDIES

### v.

## SIMON REID et al.

*Filed at Ottawa May 10, 1883—Rehearing denied September Term, 1883.*

1.  RECORDING ACT—*how far a protection to purchasers—where one appearing to hold title by one name is also known by another name— notice.* The record of deeds, etc., showed a perfect title to certain lots in *Conrad* Eickenberg, and no judgments against him. He effected a loan of money on the lots by giving a deed of trust thereon, the lenders having the abstracts of title examined by an experienced attorney, who pronounced the title good, under which trust deed the creditors acquired the title by fore-closure. It was *held,* in the·absence of any satisfactory proof of notice to the parties making the loan that Eickenberg was also known by the name of *Charles,* that they were protected against a title derived by sale on execution as to one of the lots under a prior judgment in favor of one Klickman and against *Charles* Eickenberg, although in fact Eickenberg was known by both names, Charles and Conrad, and the judgment was against Conrad by the name of Charles, the public record, however, not showing such latter fact.

2.  The law in this State protects purchasers of real estate in their pur-chase as the title appears of record, unless there be notice of something to the contrary; therefore, to affect the title of a purchaser from *Conrad* E., in whom the record showed title, by a prior judgment standing against *Charles* E., it is incumbent on the party deriving title by sale under that judgment to prove that the subsequent purchaser had notice that such judgment had been rendered against *Conrad* E. by the name of *Charles* E.

3.  SAME—*what will amount to notice.* A party making a loan to Conrad E., on a deed of trust upon lots 19 and 20, the records showing him to own the same, had their attorney examine the abstracts of the title, on which was a note of a sale of lot 20 upon a judgment against one K. and Charles E,, which was marked satisfied: *Held,* that this fact was not notice that Charles E. and Conrad E. were one and the same person, or of the existence of another prior judgment against Charles E. and another, or sufficient to put a prudent man on inquiry. The reasonable presumption might be there had been a mistake in selling one man's land on an execution against another. Bare suspicion will not raise an inference of a fraudulent intent.

4.  Where there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of facts which the *res gestæ* would suggest to a prudent mind, or where mere want of cau-tion, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser, then the purchaser will, in equity, be consid-ered, as in fact he is, a *bona fide* purchaser without notice.

5. SAME—*of what matters of record a purchaser must take notice.* A purchaser is not chargeable with constructive notice of all instruments and incumbrances of record, but only of such as lie in the apparent chain of title, or may have been made by one in some way connected with the property involved in interest, and that brought home to the notice of the purchaser.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill in chancery, brought by Frank Grundies, the appellant, in the circuit court of Cook county, against the appellees, on the 11th day of November, 1880, in which the complainant alleged that he was the owner in fee simple of lot 19, in block 55, in canal trustees' subdivision of section 7, township 39 north, of range 14 east, of the third principal meridian, situated in the city of Chicago, and sought to have an alleged claim of title to the premises by part of the defendants declared invalid, and set aside as a cloud upon the complainant's title.

The claim of title of both parties is from and through one Eickenberg, whose real name was Conrad Eickenberg, but who was also known and called by the name of Charles Eickenberg. On July 21, 1865, one Griffin, having title to lot 19 in question, and the adjoining lot 20, in the same subdivision, conveyed both lots 19 and 20 to Eickenberg, by the name of Conrad Eickenberg, by a general warranty deed. On December 2, 1865, Eickenberg, by the name of Conrad Eickenberg, executed to L. C. Paine Freer a trust deed conveying both lots 19 and 20, to secure a loan of $4500 obtained from Reid, Murdock & Fischer. On July 29, 1879, Freer conveyed both lots to Thomas Murdock, on a sale made under the power in the trust deed, and Murdock now holds the lots in trust for his firm of Reid, Murdock & Fischer. This is the defendants' claim of title. The complainant's claim of title is as follows: In 1874 Eickenberg executed an appeal bond in the penalty of $10,000, as surety of Edward Wolf, by the name of Charles Eickenberg. An action of

20—107 ILL.

debt was brought on this bond in the Superior Court of Cook county by Frank Klickman, and at the May term, 1875, a judgment was rendered in favor of Klickman, against Charles Eickenberg, impleaded with Edward Wolf, for $10,000 debt, to be discharged on the payment of $220 damages, and costs of suit. On this judgment an execution was issued and levied on lot 19, and the same was sold thereunder to Frank Klickman for $251.34, on March 25, 1876, and the sheriff's certificate of purchase issued to him, which he afterwards sold and assigned to the complainant, Frank Grundies. On January 24, 1878, the sheriff of Cook county executed to Grundies, as assignee of the certificate of purchase, a sheriff's deed, conveying to him lot 19.

The evidence in the case shows that Reid, Murdock & Fischer had no acquaintance with or knowledge of Eickenberg previous to the time of making their loan to him; that they were applied to by a loan broker for the loan of $4500 to Conrad Eickenberg, and the abstracts of title to the property in question to secure the loan, which were submitted, they had examined by Mr. Freer, an experienced lawyer, who pronounced the title good in Conrad Eickenberg, as shown by the abstracts, whereupon they made the loan, taking the trust deed upon this property to secure it. The abstracts which Mr. Freer examined, consisting of consecutive examinations made by prominent abstracters in Chicago in the usual way, show a number of mortgages or trust deeds to have been made by Conrad Eickenberg and his wife, and the making of releases thereof, and also quitclaim deeds, by other parties to Conrad Eickenberg. There is no mention anywhere in the abstracts of any "Eickenberg" having any connection with the title to the premises except *Conrad* Eickenberg, nor is there any other Eickenberg except *Conrad* Eickenberg named in the line of the title to the property. The abstracters certify that they find no judgments against Conrad Eickenberg, at any time, which are liens on said

land.   The abstract had noted on it a judgment rendered in
the circuit court of Cook county July 27, 1874, by confession
in favor of the Traders' National Bank of Chicago, against
August Klenke and *Charles* Eickenberg, for $552; that an
execution had been issued on that judgment, and that the
sheriff had levied on and sold to Joseph O. Rutter, the presi-
dent of the bank, all the interest "of said defendant" in and
to lot 20, block 55,—that being one of the lots embraced in
the trust deed, but not the lot in question,—and across the
face of the entry of this judgment is written:   "This judg-
ment satisfied in full, December 29, 1875; Jacob Gross,
clerk."   At the foot of the certificate of sale to Rutter is the
note:   "No examination made for judgments against Charles
Eickenberg."   On final hearing, upon proofs taken, the cir-
cuit court dismissed the bill, and the complainant appealed.

Messrs. FORRESTER & FELSENTHAL, for the appellant:

If a purchaser has sufficient information to lead him to a
knowledge of a fact, he is deemed in law to be cognizant of
the fact, and possession of the land is notice to the pur-
chaser of the possessor's title.   *McConnel* v. *Reid,* 4 Scam.
117; *Doyle* v. *Teas,* id. 625; *Morrison* v. *Kelly,* 22 Ill. 625.

Whatever is sufficient to put a person on inquiry will be
notice of all other facts that such inquiry would have revealed.
*Cox et al.* v. *Milner,* 23 Ill. 422.   See further as to what is
notice, *Shepardson* v. *Stevens,* 71 Ill. 646; *Preston* v. *Wil-
liams et al.* 81 id. 179; *Babcock et al.* v. *Lusk,* 57 id. 329;
*Slattery* v. *Rafferty,* 93 id. 281; *Ogden et al.* v. *Haven et al.*
24 id. 60.

Mr. FRANK J. CRAWFORD, for the appellees:

There was no evidence that there was any direct commu-
nication to appellees Reid, Murdock & Fischer, or to Mr.
Freer, that Conrad Eickenberg and Charles Eickenberg were
one and the same person.   There is no such relation between

the names Conrad and Charles as to justify the use of one for the other. They are of different derivation, and are certainly not *idem sonans;* and while it is true, as a matter of law, that two christian names, although they differ in sound, are not variant where they are of the same derivation, as, Piers and Peter, Saunders and Alexander, Jane and Joan, Jean and John; yet if the names are of different derivation, or "different in baptism," as, Agnes and Ann, Isabel and Sibil, James and Jacob, they are variant. *Myers* v. *Fegally,* 39 Pa. St. 431; 2 Roll. Abridgment, 135, 136.

For a statement of the law of constructive notice, see *Jones* v. *Smith,* 1 Hare's Ch. \*55; Sugden on Vendors, (14th ed.) chap. 24, sec. 1; *Dey* v. *Dunham,* 2 Johns. Ch. 182; *McMechan* v. *Griffing,* 3 Pick. 149; *Shirley* v. *Phillips et al.* 17 Ill. 471.

Constructive notice, flowing exclusively from matters of record, can never be construed to be more extensive or broader than the facts stated in the record. *Gale* v. *Morris,* 29 N. J. Eq. 222; *Carbine* v. *Pringle,* 90 Ill. 302.

Purchasers are not bound to look beyond the judgment or decree, and the legal effect it may have on the title which is the subject of inquiry. *Dugan et al.* v. *Follett et al.* 100 Ill. 590. See, also, *Jenkins* v. *Rosenberg et al.* 105 Ill. 157.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the time (December 2, 1875,) Reid, Murdock & Fischer made a loan to Conrad Eickenberg of $4500, and took from him a trust deed on the lot 19 in controversy, and lot 20, to secure the loan, the public records showed a perfect title to the property to be in Conrad Eickenberg. Against such apparent title appellant claims to have a paramount title, derived under a judgment against Charles Eickenberg, rendered on May 22, 1875. Apparently they are different persons, and a judgment against Charles Eickenberg would not affect the title to land in Conrad Eickenberg. But the evi-

dence shows that Conrad Eïckenberg was sometimes known and called by the name of Charles Eickenberg, and that the aforesaid judgment was in fact rendered against Conrad Eickenberg by the name of Charles Eickenberg. The public records do not show this. Our law protects the purchasers of real estate in their purchases of the same as the title appears of record, unless there be notice of something to the contrary. In order, then, to affect appellees' title derived from Conrad Eickenberg by a prior judgment standing against Charles Eickenberg, it is incumbent on appellant to make proof that at the time Reid, Murdock & Fischer took their trust deed from Conrad Eickenberg they had notice that such judgment had been rendered against Conrad Eickenberg by the name of Charles Eickenberg. As before said, the records show nothing of this. There is no pretense of any actual notice. If Reid, Murdock & Fischer were chargeable with any notice, it was merely constructive notice,—such notice, only, as the law would imply from other facts and circumstances.

The evidence in the case establishes clearly that Reid, Murdock & Fischer, or Mr. Freer, their attorney, had no knowledge or information whatever, at the time of the making of the loan and of the execution of the trust deed, of Eickenberg ever having been called or known by any other name than Conrad Eickenberg, or of the existence of the Klickman judgment,—the one under which appellant claims,—against *Charles* Eickenberg, or of its being claimed that the judgment was a lien on the property of *Conrad* Eickenberg. All that we find in the entire evidence which can be claimed as showing any notice, is what appeared in the abstract examined by Mr. Freer of the note of a sale of lot 20,—one of the two lots embraced in the trust deed,—to Rutter, upon a judgment in favor of the Traders' National Bank, which had been rendered against one August Klenke and Charles Eickenberg, and it is the only question in the case, as we regard, whether that circumstance constituted notice of the exist-

ence of the Klickman judgment rendered against Conrad Eickenberg by the name of Charles Eickenberg.

That note on the abstract showed, to be sure, that lot 20, one of the two lots which Reid, Murdock & Fischer were about to take a trust deed of from Conrad Eickenberg, but not the lot in question, had been sold on a judgment against August Klenke and Charles Eickenberg. But might not a purchaser of ordinary prudence say, what of that? and dismiss the matter without further thought. He would see that it was a case of selling one man's property on an execution against another man, and that it would not affect the title at all. Charles Eickenberg and Conrad Eickenberg were apparently different persons. There was no such relation between the names as to indicate that they were one and the same person. The title to the lots was in Conrad Eickenberg, and his title could not be affected by a sale of one of them under an execution against Charles Eickenberg. We think an intending purchaser might so conclude, and act in entire good faith, without inquiring further. Had the judgment and execution been against August Klenke alone, and the sale of lot 20 been under such execution, it would seem clear that Reid, Murdock & Fischer would not, from that circumstance, have been put upon any inquiry how the lot came to be thus sold. The judgment and execution being against Charles Eickenberg, as well as Klenke, would seem to differ the case but little. There would be the essential thing that the judgment and execution were not against the same person, apparently, as the one who held the title. From this circumstance, noted in the abstract, there would be no necessary inference that Conrad Eickenberg and Charles Eickenberg were one and the same person, and so put a purchaser from Conrad Eickenberg upon an examination whether there were not judgments against Charles Eickenberg. Other presumptions might be indulged, as, that there had occurred a mistake in selling one man's land on an execution against

another person, or that there had been some misapprehension about the name, in that one particular case, in rendering judgment against Conrad Eickenberg by the name of Charles Eickenberg. But in *McMechan* v. *Griffin*, 3 Pick. 154, it was said, with reference to notice of an unregistered deed: "The fact of notice must be proved by indubitable evidence,—either by direct evidence of the fact, or by proving other facts from which it may be clearly inferred. It is not, in such case, sufficient that the inference is probable,— it must be necessary and unquestionable."

Whether there may not be a greater strength of proof required to affect a purchaser with notice of an unregistered deed than in other cases, as has been held, we will not stop to consider. In *Doyle* v. *Teas*, 4 Scam. 250, the principle of the distinction was doubted. Appellant's counsel remark upon the supposed fact that Mr. Freer, the attorney of Reid, Murdock & Fischer, caused entry of the satisfaction of the Traders' bank judgment to be made at the time of the loan, as evincing knowledge that that judgment was a lien on lot 20; but there is no evidence of that fact. Mr. Freer testifies, explicitly, that he had no knowledge of the satisfaction of that judgment, and all that the evidence shows on the subject is, that Rutter's understanding was, the judgment was paid from the proceeds of the loan. It is not lot 20, which was sold under the judgment in favor of the Traders' bank, that is involved here, but lot 19, sold under the Klickman judgment, and it is this Klickman judgment against Charles Eickenberg in regard to which it is necessary to make proof of notice. All, we think, that can be said as to the sale of lot 20, one of the two lots Eickenberg had title to, under a judgment and execution against Charles Eickenberg, is, that it was a suspicious circumstance, which might have led a person of extreme caution to inquire and find out how it had come that that lot had been sold on an execution against some one else. But suspicion is not enough. As said in

*McConnel* v. *Reed*, 4 Scam. 123, "bare suspicion will not raise an inference of fraudulent intent." The point of inquiry here, is, whether this note on the abstract of the sale of lot 20, under a judgment against August Klenke and Charles Eickenberg, was a circumstance sufficient to charge Reid, Murdock & Fischer with notice that Conrad Eickenberg went by the name of Charles Eickenberg as well as Conrad Eickenberg, and to impose upon them the duty of examination as to judgments against Charles as well as against Conrad Eickenberg,—whether it was a circumstance which would have led a man of ordinary prudence and caution to make inquiry in regard to that fact, and that the not doing so was gross negligence, and of the character of fraudulent intent. In a discussion of this subject of constructive notice, by Vice Chancellor Wigram, in *Jones* v. *Smith*, 1 Hare's Ch. 55, he thus remarks: "If, in short, there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of facts which the *res gestæ* would suggest to a prudent mind; if mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser,—then the doctrine of constructive notice will not apply; then the purchaser will, in equity, be considered, as in fact he is, a *bona fide* purchaser without notice. This is clearly Sir Edward Sugden's opinion, and, with that sanction, I have no hesitation in saying it is mine also." In *Ware* v. *Lord Egmont*, 4 De G. M. & G. 473, the Lord Chancellor Cranworth, in giving judgment, said: "The question upon constructive notice is not whether the purchaser had the means of obtaining, and might, by prudent caution, have obtained, the knowledge in question, but whether the not obtaining it was an act of gross or culpable negligence." And see 2 Sugden on Vendors and Purchasers, (14th ed.) 571, 572; *Doyle* v. *Teas*, 4 Scam. 202.

But further, we do not see that any notice with respect to lot 20 would impose upon appellees any duty toward one

having interest only in lot 19.   As regards such person, all its significance would appear to be in its affording a presumption that therefrom appellees were led to make inquiry and actual ascertainment of the fact that Eickenberg was known and called by the name of Charles, as well as by the name of Conrad.   But when proof positive is made, as it was here, that appellees were not led to make such inquiry, and never did have any knowledge whatever of Conrad being known or called by the name of Charles, or of any judgment ever being rendered against Conrad by the name of Charles, it destroys the presumption, and all effect of the notice would seem to be done away with.   Charles Eickenberg apparently is not connected of record with the title.   We have frequently decided that a purchaser is not chargeable with constructive notice of all instruments and incumbrances of record, but only of such as lie in the apparent chain of title, or may have been made by one in some way connected with the property involved in interest, and that brought home to the notice of the purchaser.   *Manly* v. *Pettee*, 38 Ill. 128; *Irish* v. *Sharp*, 89 id. 261; *Carbine* v. *Pringle*, 90 id. 302.

Finding no error in the decree, it must be affirmed.

*Decree affirmed.*